JOHN H. WRIGHT, ASSIGNEE, *v.* WILLIAM H. HARDY.

1. LANDLORD AND TENANT. *Assignees of lessor. Code 1892, § 2539.*

    The provisions of code, 1892, § 2539, giving to the assignees of the
    lessor the same right of entry as the lessor had enjoyed for the
    nonpayment of rent, waste, forfeiture of conditions, etc., apply
    only to estates for life or years, and not to estates in fee.

2. SAME. *Lands let to lease.*

    Lands let to lease are those conveyed only for life, years, or at will.

3. CONVEYANCES. *Payment of rent. Conditions subsequent.*

    A deed made to a grantee and her assigns, the word "heirs" not be-
    ing used, in consideration of the payment of a designated rent,
    carries the fee, a less estate not being limited by express words,
    the covenant to pay rent being a condition subsequent.

4. SAME. *Right of re-entry for nonpayment of rent.*

    The right of re-entry for nonpayment of rent is not an estate in
    land; it is a mere right or chose in action.

5. SAME. *Choses in action. Assignment. Code 1892, § 660.*

    The assignment in writing of any chose in action. under code 1892,
    § 660, authorizing the same, empowers the assignee to sue and re-
    cover on the chose in his own name.

6. SAME. *Any interest in land transferable. Code 1892, § 2433.*

    Any interest in or claim to land may, under code 1892, § 2433, author-
    izing the same, be conveyed in writing.

7. SAME. *Covenant to pay rent.*

A grantee's covenant to pay a stipulated rent, contained in and con-
stituting the consideration for the deed to him, is, under code
1892, §§ 660, 2433, the one section authorizing the assignment in
writing of any chose in action, and the other the conveying in
writing of any interest in land, binding between the assignee of
the covenant and the assignee of the land in fee.

8. SAME. *Rents. Equity jurisdiction.*

If a deed provide that the grantee shall pay rents according to a
valuation of the land to be made at stated periods, and the time
for such valuation pass, the chancery court, in an action seeking an
accounting, may fix the valuation upon which rent shall be paid.

9. SAME. *Failure to demand, etc.*

A right to demand rent where the sum is to be fixed upon a period-
ical valuation of the land is not lost by a mere failure to call for
such valuation promptly at the beginning of each period.

FROM the chancery court of Lauderdale county.

HON. NATHAN C. HILL, Chancellor.

The appellant, Wright, assignee, etc., was the complainant
in the court below. Hardy, the appelllee, was defendant there.
On the first day of July, 1873, L. A. Ragsdale, the then
owner of the property, as the party of the first part, and Sallie
A. Roberts, as party of the second part, entered into an inden-
ture, by which it was agreed and covenanted as follows: That
the party of the first part, in consideration of the covenants
of the party of the second part, "doth demise and let to the
party of the second part lots 2 and 3 of block 31 of Dearman's
survey of the city of Meridian, and, for herself and assigns,
covenanted with the party of the second part and her assigns,
that, upon the performance by the second party and her assigns
of the covenants provided by said indenture to be kept and
performed by her or them, he, the said second party, for him-
self and assigns, would keep said second party and her assigns
in the lawful and undisturbed possession of said premises
during said demise;" that the said second party takes as ten-
ant from said first party the said premises, and doth, for her-

self and assigns, covenant with said first party and his assigns, that, for the rent of said premises, she will pay to said first party and to his assigns, on the expiration of each six months, from the beginning of the term and during this lease, four per cent. in gold upon the gold fee simple value of the premises; that said second party would build upon said land a dwelling house to be worth not less than $3,000, and would pay all taxes thereon; that for the first ten years of the lease the value in fee simple of said land, exclusive of the improvements thereon, shall be taken to be $750 in gold; that upon the expiration of each succeeding ten years of the lease another fee simple valuation of said land shall be made upon a gold basis, and which value shall be the sum on which the rent shall be calculated for said ten years, and which valuation shall exclude the value of the improvements; that, if the parties or their assigns could not agree upon a valuation of said lots, such party should select a referee to make such valuation, or, if they disagreed, they were to select an umpire to value said lands; that, should either party fail or refuse to make an appraisement or to select a referee to appraise said lots, the other party may cause said lots to be appraised by three disinterested freeholders, to be selected by said party; that, upon the failure of the party of the second part or her assigns to pay the rent covenanted to be paid, the party of the first part or his assigns may enter upon said lands and the improvements thereon and relet the same for the payment of said rent.

On March 9, 1897, J. H. Wright, assignee, filed his bill setting out the conveyance of the property by said Lewis A. Ragsdale to said Sallie A. Roberts, alleging the above recited facts, and that, on the eleventh day of September, 1873, the defendant, W. H. Hardy, became the assignee of said lease from the said Sallie A. Roberts; that no revaluation of said lots was made at the end of the first or second ten-year period of said lease, but that on or about the first day of July, 1893, referees were appointed, but that they disagreed upon a valua-

tion and failed to select an umpire, and thus the matter has stood to the present time; that Ragsdale died in December, 1886, leaving a last will and testament, in which "he devised his interest in said premises" to his son and daughter, L. A. Ragsdale, Jr., and Ella C. Coffee; that said L. A. Ragsdale, Jr., conveyed his undivided half interest in said lots to the Meridian Land & Industrial Company, a corporation, and that on the fourth day of May, 1889, the said corporation had conveyed its half interest so acquired to the wife of the defendant, who has since departed this life, leaving four minor children; that, on the thirtieth day of July, 1894, Mrs. Ella C. Coffee made a deed of general assignment of all her property to J. H. Wright, for the benefit of her creditors, "thereby investing him," as it is alleged, "with the reversion in fee to her said undivided one-half interest in said premises;" that said deed of assignment was made in pursuance of chapter 8, code of 1892, and that the complainant duly qualified as required therein; that the defendant paid rent on said premises on the basis of the original valuation up to July 1, 1893, the end of the second ten-year period; that, on the fifth day of December, 1896, complainant received a note from defendant stating that he had paid to Mrs. Ella C. Coffee the ground rent due on said property up to July 1, 1893, when the ten-year term expired, at which a new valuation under the lease was to be made, if desired; that, at the instance of Mrs. Coffee, referees were chosen to make the revaluation, but that it had never been made, and that he, the defendant, was then, and had been all the time, ready to pay on the old valuation whenever bills for the same were presented; that on the twentieth day of February, 1897, complainant's counsel proposed to defendant to accept of him the ground rents at the present valuation up to that date with the proviso that the acceptance should not prejudice complainant's right to a revaluation, and to collect the difference, if any, between the present valuation and the revaluation when made, and to revalue said property as pre-

scribed in the lease; that the defendant declined the proposition, and claimed that by reason of the dealings between Mrs. Coffee and himself above recited that "he is a tenant holding over for another term of ten years at the former rate of rent."

In this state of the controversy, to avoid litigation, this bill was filed, praying for an account of the rent due complainant and for a decree therefor, and for a writ of assistance if the same be not paid, and for revaluation of said property according to the provisions of said lease.

The bill was demurred to, the demurrer was sustained, and the complainant appealed.

*G. Q. Hall & Son,* for appellant.

In Mississippi any interest in or claim to land may be conveyed by writing signed and delivered, and the statutory effect thereof is to transfer the title, with all its incidents, as fully and perfectly as if transferred by feoffment with livery of seizin, notwithstanding there may be adverse possession. Code 1892, § 2433. Words of inheritance are declared unnecessary. Sec. 2435, code 1892. Alienation of a greater estate than the grantor had is effective to pass such estate as he really had. Sec. 2444, code 1892. The power of disposition by will is of all the estate, right, title or interest in possession, reversion or remainder in any lands, tenements, hereditaments or annuities, or rents charged upon or issuing out of them. Sec. 4488, code 1892. And, as a substitute for 32 Henry VIII., ch. 8, 34, our statute conferring upon and defining the rights of assignees, or lessors, enacts that all persons who are grantees of land let to lease, or assignees of the reversion thereof from any person or persons, and also the heirs, executors, administrators and assigns of such grantees or assignees, shall have and enjoy like advantages against the lessees, their executors, administrators and assigns by entry for nonpayment of rent, or suffering any forfeiture, and that they may have and enjoy the benefits of all covenants and agreements in the leases, demises or grants

against the lessees, their executors, administrators or assigns as the lessors themselves or their heirs ought, should or might have had or enjoyed.    Sec. 2539, code 1892.

Section 2540 defines the rights of lessees as against assignees or lessors.    Language could not be more sweeping or more unequivocal or more unrestricted than is employed in § 2539. Every infirmity and every restriction at the common law upon the rights of grantees and assignees are removed, and by force of the statute they are placed precisely in the shoes of the lessor, and the same remedies are extended to them by entry for non-payment of rent, or for doing of waste, or suffering any forfeitures, and also by action on the covenants and agreements contained in such grants and leases, the same that existed in the landlord, thus creating a statutory privity between such grantee or assignee, deraigning his rights from the landlord and the lessee, his legal representatives or assigns.

And why should this defendant be permitted to take this estate without paying the consideration which supports it, to wit, the semi-annual rent charge, any more than that he should be permitted to take land, conveyed to him in consideration of so much money to be paid, without paying the purchase price? And if the lessor's heirs, however numerous, could, for default in payment, severally maintain their suits for their respective undivided interest in the land supporting the reversion, why may not several grantees of the lands let to lease, or assignees of the reversion thereof, be accorded the same right?    The reason for the distinction is too technical and too refined for this age of common sense and judicial enlightenment.    But, apart from that, the statute puts the question forever at rest.

We submit, as conclusive of the main contention, the following:    That the interest of a lessor or a grantor in an estate in fee with rent reserved is a rent charge that runs with the land; that is an interest in land in the nature of real estate, and is descendable, divisible and assignable, although there is no reversion in the person entitled to it, and that this is the law

both in England and America. In support of the foregoing proposition I beg to refer to Tiedeman Real Prop., secs. 190, 191, 192 and 643; *VanRensselaer* v. *Hays*, 12 N. Y., 68, as reported in 75 Am. Dec., 278, and note; *Cruger* v. *McLanry*, 41 N. Y., 227, and note of reporter showing and reciting the cases sustaining such leases, even after repeal of act of 1805. The case of *VanRensselaer* v. *Hays* is a leading case and is a splendid presentation of the proposition and the authorities supporting it.

*W. H. Hardy, in propria persona.*

That the deed conveyed an estate in land to Sallie A. Roberts, who in turn conveyed the same estate to the appellee, is admitted in the bill. It is, therefore, necessary to go back to first principles to determine what this estate is. "An estate in land is the degree, quantity, nature, and extent of interest which a person has in real property." 1 Bouv. Law Dic., 474; 6 Am. & Eng. Enc. L., 875. Estates in land at common law are classified as follows: Estates in fee; estates in tail; estates for life; estates *per autre vie;* dower, curtesy, homestead; estates for years; estates at will; estates from year to year; estates at sufferance; joint estates; joint tenancy in common, co-parcenary; estates by entirety; estates in severalty; estates on condition; estate of freehold," etc. 6 Am. & Eng. Enc. L., 875, *et seq.* Some of these estates have been by our statutes abolished, and if we will examine those remaining we will find that the estate conveyed by Ragsdale is an "estate on condition," which is defined to be "one that may be created, enlarged, or defeated upon the happening of a particular event." 6 Am. & Eng. Enc. L., 900; 2 Wash. Real Prop., 2; 2 Blackstone's Com., 154. Washburn defines a condition in the following terms: "A condition is a qualification or restriction annexed to the conveyance, and so a condition subsequent is one that defeats an estate already vested. It is, however, contended that this is not an estate upon condition, but is simply

a leasehold with covenants. But this view cannot be maintained, because the rule of construction is "though the language imports a covenant, if the right of re-entry is given on breach, it is construed as a condition." *Moore* v. *Pitts*, 53 N. Y., 85; 2 Wash., 4.

In the construction of wills the rule has been declared in a large number of cases in various states as follows: "If the act or condition required does not necessarily precede the vesting of the estate, but may accompany or follow it, and if the act may as well be done after as before the vesting of the estate, or if, from the nature of the act to be performed, and the time required for its performance, it is evidently the intention of the parties that the estate shall vest and the grantee perform the act after taking possession, then the condition is subsequent." 6 Am. & Eng. Enc. L., 901, citing the following cases: *Underhill* v. *Saratoga R. R. Co.*, 20 Bar. (N. Y.), 459; *Waters* v. *Bruden*, 70 Pa. St., 235; *Hunt* v. *Beeson*, 18 Ind., 380; *Monroe* v. *Bowen*, 26 Mich., 523; *Austin* v. *Cambridgeport Parish*, 21 Pick. (Mass.), 215; *Rogan* v. *Walker*, 1 Wis., 454.

The reason of this liberal rule of construction is that "the law favors the vesting of estates and is inclined to treat conditions as subsequent rather than precedent." 6 Am. & Eng. Enc. L., 901.

Chancellor Kent defines conditions subsequent as follows: "Subsequent conditions are those which operate upon estates already created and vested and render them liable to be defeated. Of this kind are most of the estates upon condition in law, and which are liable to be defeated, on breach of the condition, as on failure of payment of the rent or performance of other services annexed to the estate. So long as these estates upon subsequent condition continue unbroken, they remain in the same situation as if no such qualification had been annexed. The persons who have an estate of freehold subject to a condition are seized and may convey or devise the same or trans-

mit the inheritance to their heirs, though the estate will con-
tinue defeasible, until the condition be performed or destroyed
or released or barred by the statute of limitations or estoppel.''
4 Kent's Com., 142.

This subject is elaborately treated by Washburn on Real
Property in volume 2, chapter 14, under the head of Corporeal
Hereditaments, to which the court is referred.

All the authorities hold that the condition can only be re-
served to the grantor and his heirs.    Washburn says:  '' The
doctrine of estates upon condition seem to have been originally
derived from the feudal law and grew out of the conditions
upon which fiefs were granted.    If the tenant neglected to pay
or to perform his services, the lord might resume his fief.    It
is upon this ground that conditions are held to be reserved to
the grantor or his heirs only, and he and they alone can avail
of the right of resuming the estate for the breach.''    2 Wash-
burn, 5; 4 Kent, 139.    Kent states the rule without giving
the reason thus:  '' Conditions can only be reserved for the
grantor and his heirs.    A stranger cannot take advantage of
them.''    4 Kent Com., 137, 144.

Adams on Ejectment states the rule thus with an illustra-
tion:  ''A power of re-entry cannot be reserved to a stranger,
and when, in a building lease, a trustee and his *cestui que trust*
were both demising parties, and the power of re-entry was re-
served to both, and the state of the title appears in the recitals
in the lease, the court, without argument, declared the proviso
to be void.''    Adams on Ejectment, 215.

The rule is more strongly stated in 6 Am. & Eng. Enc. L.,
903, 904, thus :  '' On breach of the condition the estate does
not at once revest in the grantor, but the right of entry be-
comes available, and the estate revests only after entry made
for the purpose of terminating the estate.    This right of entry
is not an estate in lands or even a possibility of reverter.    It is
a mere chose in action.    It is the essence of an estate on con-
dition that the right to enter be reserved to the grantor and

his heirs. It cannot be reserved to a stranger and cannot be assigned. Indeed the right is gone forever if the grantor attempts to convey it." 6 Am. & Eng. Enc. L., 903, 904, cases cited; *Williams* v. *Jordan*, 83 N. C., 371; *Schulenberg* v. *Harriman*, 21 Wall. (U. S.), 44. The right of entry cannot be originally reserved to a third person. *Fonda* v. *Sage*, 46 Barb. (N. Y.), 109–122. Any attempt to convey it to . third person ends it. *Norris* v. *Milner*, 20 Ga., 563; *Guild* v. *Richards*, 16 Gray (Mass.), 309; *Underhill* v. *Saratoga R. R. Co.*, Bar., 455.

Argued orally by *G. Q. Hall*, for appellant, and by *W. H. Hardy*, *pro se.*

TERRAL, J., delivered the opinion of the court.

The contention of the parties, as stated and argued in their briefs, seems much broader than that arising upon the pleadings. The question apparently is, whether the chancery court can fix a valuation upon the property upon which a percentage rent is to be paid, where the parties have failed to make the valuation, and the time for the re-valuation has passed.

The appellee plants himself: (1) Upon the common law doctrine that the conveyance of Louis A. Ragsdale to Sallie A. Roberts is a conveyance in fee upon a condition subsequent, and that, as at common law a condition can be reserved only to the grantor or his heirs, the conveyances of Louis Ragsdale, Jr., to the Land & Industrial Company and of Ella C. Coffee to complainant, Wright, determined the condition, and the estate has become absolute in the defendant, discharged of all conditions; (2) that Ragsdale, after the conveyance to Sallie A. Roberts, had only a right of entry, that could not be reserved to a stranger or assigned, and that the assignment of it by Mrs. Coffee to Wright destroyed the right of entry altogether, and the estate became absolute in the defendant; (3)

he insists that, if he is liable to rent, the complainant has a full and adequate remedy at law, or in his own hands.

Complainant's counsel says that § 2539, code 1892, gives a remedy to assignees denied to them by the common law, and that he rightly appeals to the chancery court for its assistance in the premises. The defendant denies the application of § 2539 to a conveyance in fee like this, and reasserts the destruction of the conditions by reason of the assignments. We are cited to an array of ancient authorities on this subject, which may be consulted from the briefs of learned counsel. We content ourselves with briefly stating the conclusions we have reached.

It is evident, we think, that § 2539 applies only to estates for life or years, and not to estates in fee. It is substantially the statute of 32 Henry VIII., ch. 34, which the judges in *Lewes* v. *Ridge*, Cro. Eliz., 863, held did not apply to estates in fee or in tail, but only upon leases made for life or for years. The section, by the very terms, applies to "lands let to lease," and lands let to lease are those conveyed only for life, years or at will. 2 Bl. Com., * 316, 317; 2 Tho. Co., * 403.

The conveyance here being without the use of the word heir, is, under our statute, a conveyance of the fee from Ragsdale to Roberts upon conditions subsequent, and, among other conditions, upon that of the payment of rent at stated periods. At common law the right of entry for conditions broken could be made only by the grantor or his heirs; it was a mere chose or right in action, and could not be reserved to a stranger or assigned.

The strongest expression of common law rule is found in Coke's Institutes, wherein he says: "For avoiding of maintenance, suppression of right, and stirring up of suits, nothing in action, entry, or re-entry, can be granted over; for so, under color thereof, pretended titles might be granted to great men, whereby right might be trodden down and the weak oppressed, which the common law forbiddeth, as men to grant before they be in possession." 2 Tho. Co., * 85.

The right of re-entry for non-payment of rent is not an estate in land; it is a mere right or chose in action. *De Peyster* v. *Michael*, 6 N. Y., 506.

The condition of society in this country has never been such as to require the importation of this rigid common law doctrine, and if it has been brought hither, and has not been displaced by the civilization of the age, it is extirpated, root and branch, by § 660 code 1892, which provides that "the assignee of any chose in action may sue and recover the same in his own name, if the assignment be in writing.

Section 2433 code 1892 permits any interest in land to be conveyed by writing, and § 660 code 1892 gives to assignees of grantors in fee and to the assignees of covenants expressed in conveyances in fee the like remedies for the estates assigned, and upon the conditions and covenants contained in them, that the common law gave to the original parties and to their privies in contract. In equity the rule has always been that a chose in action is assignable. 1 Pom. Eq., sec. 168.

The covenants, therefore, of Mrs. Roberts, to pay the rents expressed in the indenture, by which she took conveyance in fee, were not discharged or determined by the conveyance of Ragsdale, Jr., to the land company, or by the conveyance of Mrs. Coffee to Wright. These covenants, legally and equitably, are as fully binding between the assignees of this estate in fee and the assignees of the covenants expressed in the indenture of conveyance as they were between L. A. Ragsdale, Sr., and Sallie A. Roberts.

The assignees of the estate being bound by the covenants of Sallie A. Roberts to pay rents according to a valuation to be made every ten years, and no rent having been paid since the third ten-year period began, the chancery court, to avoid any difficulty and impending lawsuits in the matter, may fix the valuation upon which the rent is to be paid. We do not regard the time of the valuation to be so material as that the valuation must be called for at the beginning of the ten-year

period, or else the revaluation should be considered as waived. Under the contract equity and justice require that a rent shall be paid on the value of the lots, exclusive of improvements, to be taken every ten years. The right to a revaluation has not been forfeited or waived by its not having been made or insisted upon earlier.

*Reversed and remanded.*